U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 08-00599

ORDER DENYING MOTIONS TO DISMISS AND MOTIONS FOR RELIEF FROM STAY

The relief set forth on the following pages, for a total of 18 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**09/11/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 09/11/2008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Harmony Holdings, LLC,<br>　　　　　　　　　　Debtor. | C/A No. 08-00599-DD<br><br>Chapter 11 |
| IN RE:<br><br>Spanish Moss Development, LLC,<br>　　　　　　　　　　Debtor. | C/A No. 08-00604-DD<br><br>Chapter 11<br><br>ORDER DENYING MOTIONS TO DISMISS AND MOTIONS FOR RELIEF FROM STAY |

　　　　This matter comes before the Court upon Motions to Dismiss filed by Barney Ng and R. E. Loans, LLC (collectively "Movants") on May 2, 2008 and Motions for Relief From Stay filed on May 1, 2008, one of each being filed in each of the above cases which are being jointly administered pursuant to an order entered on June 10, 2008.  A hearing was held on the Motions August 22, 2008.  Debtor and Movants appeared by and through counsel to present arguments.  Counsel for the unsecured creditors committee also appeared at the hearing and indicated the constituents of the committee favored continuing with attempts to reorganize.

　　　　Movants' case consisted entirely of requests that the Court take judicial notice of the following: (1) Schedules, (2) monthly operating reports, (3) the Court's single asset real estate order, (4) a summary of pre-petition accounts payable, (5) the loan documents executed between the parties, (6) all filed proofs of claim ("POC"), (7) a newspaper article from the Georgetown Times, (8) a newspaper article from the Charleston City paper, (9) a POC from the TV Guild, (10) certain post-petition expenditure records,  and (11) emails from David Eldredge, a member of the limited liability company that owns the Debtors, to

Barney Ng and others. Movants also cross examined Mr. Eldredge and elicited certain testimony.

### *Discussion of Judicial Notice and Public Records*

A judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b)*. The Honorable Barry Russell states in his Bankruptcy Evidence Manual that, "[t]he usual method of establishing the facts in litigation is through the introduction of evidence, ordinarily through the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process may be dispensed with as unnecessary; a high degree of indisputability is the essential prerequisite. *Barry Russell, Bankr. Evid. Manual § 201.1 (2007 ed.)*.

"The Advisory Committee Notes make clear that extreme caution should be used in taking judicial notice of adjudicative facts because of the traditional belief that the taking of evidence, subject to established safeguards, is the best way to resolve controversies involving disputes of facts. The Fifth Circuit in *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347–48 (5th Cir.1982) stated the proposition as follows: 'Judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities….'" *Barry Russell, Bankr. Evid. Manual § 201.2 (2007 ed.)*. Judge Russell further explains the subtleties of taking judicial notice regarding documents filed with the Court, stating,

> There exists a mistaken notion that it means taking judicial notice of the truth of facts asserted in every document in a court file, including pleadings and affidavits. However, a court may not take judicial notice of hearsay allegations as being true merely because they are part of a court record or file. It is difficult to understand why the filing of a document with a court should magically result in the contents of the document attaining a

2

>sufficient degree of reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial before a bankruptcy judge.
>
>The taking of judicial notice is often merely a way of simplifying the process of authenticating documents which would generally require certification under *FRE 901* and *902*, and overcoming *FRE 1002* best evidence problems (i.e. the concept that because they are in the Court's own files they are accepted as genuine). It is clear however, that authenticating a document does not automatically insure its introduction into evidence in the face of other objections, such as hearsay.
>
>"While a bankruptcy judge may take judicial notice of a bankruptcy court's records, see Fed.R.Evid. 201(c), … we may not infer the truth of the facts contained in documents, unfettered by rules of evidence or logic, simply because such documents were filed with the court. *See Barry Russell, Bankruptcy Evidence Manual § 201.5 at 201 (West 1995)*." *In re Scarpinito*, 196 B.R. 257 (Bkrtcy.E.D.N.Y.1996).

*Barry Russell, Bankr. Evid. Manual § 201.5 (2007 ed.)*. *See also In re James,* 300 B.R. 890, 895 (Bankr. W.D. Tex 2003)(*quoting In re Earl*, 140 B.R. 728 n.2 (Bankr. N.D. Ind. 1992) ("Courts realize that there is a 'very crucial distinction between taking judicial notice of the fact that an entity has filed a document in the case, or in a related case, on a given date, i.e., the existence thereof, and the taking of judicial notice of the truth or falsity [of the] contents of any such document for the purpose of making a finding of fact….' The Federal Rules of Evidence 104(a) and 1101(d)(1) make clear that Rule 201 typically does not apply to facts considered by a court when ruling on the admissibility of evidence.")[Brackets in original].

Thus, while the Court *may* take judicial notice of the fact that a document or pleading has been filed for certain purposes, *See In re Gordon-Brown*, 340 B.R. 751 (Bankr. E.D. Pa. 2006)(A bankruptcy court may take judicial notice of the docket in a case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute), it does not necessarily take judicial notice of the facts contained within the pleading. Admission into evidence of facts contained within a pleading filed with a court must also be evaluated using the remaining evidentiary rules, such as hearsay and exceptions thereto.

3

Of the eleven enumerated items above the Court will take judicial notice and admit into evidence the following for the reasons stated: The Court will take judicial notice of the schedules and the Court's single asset real estate order. The Court's order is an unappealed order, and is the law of the case for certain purposes. The Schedules shall be admitted into evidence because they are admissions of the Debtor signed under penalty of perjury. *See In re Earl*, 140 B.R. 728 (Bankr. N.D. Ind.1992) ("[V]erified Schedules and Statements filed by a debtors are not just pleadings, motions or exhibits thereto. They are evidentiary admissions. *In re Cobb*, 56 B.R. 440, 442 n. 3 (Bankr. N.D. Ill.1985). *See* Fed.R.Evid. 801(d)(2) (Admission by a party opponent not hearsay)"); *See also In re Reed*, 293 B.R. 65 (Bankr. Kan. 2003)(same); *In re Camp*, 170 B.R. 610, 612 (Bankr. N.D. Ohio 1994)(same); *In re Snider Farms, Inc.*, 125 B.R. 993, 995 (Bankr. N.D. Ind. 1991)(taking judicial notice of contents of court order). The Court shall also take judicial notice of the monthly operating reports as admissions of the Debtors, however, Movants stated that they offered them solely for the purpose of showing that Debtor has no employees and the Court will limit admission to that purpose.

The Court will admit the summary of accounts payable offered by Movants to the extent that David Eldredge testified about the expenses. The loan documents executed between the parties will be admitted as the parties stipulated to their authenticity. The Court will take judicial notice of all filed POCs, but only as to the fact that they are filed. The statements within the proofs of claim are hearsay. The Court will not admit the newspaper articles from either the Georgetown Times or the Charleston City paper as each contain hearsay. The POC filed by the TV Guild will be judicially noticed as filed but will not be allowed for any other purpose. Mr. Eldredge testified that he had no information concerning the claim and Movant offered no other evidence regarding the TV Guild claim. The post-

4

petition accounts payable records will be admitted to the extend Mr. Eldredge had knowledge and testified about them. Lastly, the emails from David Eldredge to Barney Ng will be allowed. Mr. Eldredge testified that they were emails sent or received by him between several recipients. This, however, does not make the matters contained in the emails so reliable as to justify judicial notice of all of the facts stated therein. Mr. Eldredge did acknowledge sending or receiving the emails and to the extent he sent the emails they are his prior statements.

Movants argued at the hearing that the public records exception to the hearsay rule applied to all of his exhibits because they were filed with the Court. The public record exception is much more restrictive than Movants contend. Fed. R. Evid. 803(8) excepts from hearsay,

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Thus, to fit the exception the record must have been authored by a public office or agency. *See Ellis v. International Playtex, Inc.*, 745 F.2d 292 (C.A. Va. 1984)(*quoting Wong Wing Foo v. McGrath*, 196 F.2d 120 (9th Cir. 1952)("The rule is premised on 'the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record'"). It does not, as Movants suggests, except *any* document filed on the Court's docket from the hearsay rule. The purpose of the hearsay rule is to remove from evidence out-of-court statements offered for their truth that have questionable trustworthiness when the opposing party has no opportunity to contest the

5

hearsay's reliability. The mere fact that a document is filed with the Court does not bolster its reliability.

*Facts[1]*

1. Harmony Holdings, LLC and Spanish Moss Development, LLC (collectively "Debtors") filed for Chapter 11 bankruptcy relief on January 31, 2008. Timothy Casey was the principal of the Debtors at the time of filing.

2. On June 10, 2008 the Court entered an order that required the two cases to be jointly administered.

3. On June 20, 2008 the Court entered an order determining that the property held by the Debtors constituted single asset real estate as defined by 11 U.S.C. § 101(51B).[2] Debtors own real property and improvements that are a single project, known as Harmony Township. Harmony Township is a planned unit development designed by Duany Plater-Zyberk & Company in the new urban style.

4. The real estate and its improvements generated substantially all of the gross income of the Debtors

5. There is no business activity on the real property owned by these Debtors other than repairing, improving and developing the property and the rental of housing units.

6. Harmony Holdings, LLC ("Harmony") lists the following secured creditors on schedule D:

    a. Barney Ng                        $5,000,000
    b. East Coast Equipment Rentals     $38,465
    c. Harmony Plantation, LLC          $145,000
    d. Ranbat, LLC                      $2,600,000
    e. RE Loans, LLC                    $39,000,000

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted. These include facts judicially noticed that are contained in Movants submitted exhibits with the limitations as discussed in the prior section of this order.

[2] Further references to the Bankruptcy Code shall be by section number only.

6

    f.  Shader and Sons, Inc.    $132,494
    g.  Shotcrete Pool of SC    $123,000
    h.  The Earthworks Group    $85,504
    i.  Tom Clark Construction    $148,500
    j.  Alan Wheeler    $51,500
    k.  Joe Weiss    $51,500

7. Spanish Moss Development, LLC ("Spanish Moss") lists the following secured creditors on schedule D:

    a.  Barney Ng    $5,000,000
    b.  Anglo American Financial    $1,036,000
    c.  First Federal    $290,000
    d.  Georgetown County Water    UNKNOWN
    e.  Harmony Plantation, LLC    $145,000
    f.  Harmony Township, Inc.    UNKNOWN
    g.  RE Loans, LLC    $39,000,000

8. Debtors scheduled the debts owed to RE Loans and Barney Ng as disputed.

9. Harmony lists unsecured priority debt in the amount of $309,742 and general unsecured debt in the amount of approximately $520,000.

10. Spanish Moss lists no priority or general unsecured debt.

11. Debtors executed notes and mortgages encumbering the real property in favor of RE Loans, LLC, Ranbat, LLC, and Barney Ng.

12. Tim Casey failed to appear at the Debtors' § 341 hearing, but David Eldredge and Charles Thompson appeared on behalf of the Debtors.

13. At some point in 2005 Harmony Holdings, LLC paid $2,761,601 to an entity known as Palmetto Pointe, although the purpose of the payment was not introduced into evidence.

14. Tim Casey, as principal, sold his interest in Harmony and Spanish Moss to Harmony Development, LLC for the sum of $5,000 plus assumption of all liabilities. Indirectly, through a number of other entities, David Eldredge and Charles

7

Thompson are now the principals of the Debtors and exercise operational control over the entities.

### *Movants' Position on Motions to Dismiss*

Movants' Motions to Dismiss are based on § 1112(b). Movants allege bad faith as cause for dismissal. Bad faith is not an enumerated ground under § 1112(b)(4), but courts have found that bad faith is cause that justifies dismissal of a Chapter 11 case. *See Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). Movants argue that the Debtors are using this bankruptcy case to increase the equity position of David Eldredge and Charles Thompson by "strong-arming" Barney Ng and RE Loans into renegotiating the loans.

### *Bad Faith Standard*

In the Fourth Circuit a party moving for dismissal on the ground of bad faith must prove, by a preponderance of the evidence, both the objective futility of reorganization and subjective bad faith. *Id. See also In re Dunes Hotel Associates*, 94-75715-JW (Bankr. D.S.C. September 26, 2007) Aff'd *Dunes Hotel Assoc. v. Hyatt Corp.*, 245 B.R. 492 (D.S.C. 2000). The Fourth Circuit Court of Appeals recently re-embraced the *Carolin* factors in *Coleman v. Cmty. Trust Bank (In re Coleman)*, 426 F.3d 719, 728 (4th Cir. 2005), stating, "In *Carolin* . . . we held that a Chapter 11 petition may be dismissed for lack of good faith on the part of the petitioner, but to warrant dismissal, 'both objective futility [of the bankruptcy filing] and subjective bad faith [must] be shown.'" Id. (internal citations omitted)[Brackets in original].

### *Analysis*

Movants did not offer any witnesses in support of their case. Rather, Movants relied solely on their pleadings and asked the Court to take judicial notice of certain facts. While, as previously discussed, the Court has taken judicial notice of a number of facts and

8

admitted certain exhibits into evidence (some for limited purposes), it does so with reluctance. A party should not shuffle reams of paper and ask the Court to locate and judicially notice all the facts that support the party's case. First, given the scope of Fed. R. Evid. 201, it would be a rare occurrence indeed if all facts necessary to prove a party's case were so uncontroverted as to justify judicial notice. More importantly, it is not this Court's function to endlessly explore the record for facts that support the case of either party. *See Krol v. North Shore Holdings, Ltd. (In re Sorci)*, 315 B.R. 723 (Bankr. N.D. Ill. 2004)("[I]t is not the responsibility of the Court to behave 'like pigs, hunting for truffles buried in briefs.' While the court may, in its discretion, take judicial notice of matters of public record, it is not the responsibility of the court to scour the record to make a party's case for it")(Internal citations omitted). A party should state each specific fact it wishes the Court to find by judicial notice. It is not sufficient to ask the Court to take judicial notice of a document (schedules, monthly reports, orders, etc.), rather, each indisputable fact should be recited with particularity. This was not done by Movants.

That being said the Court will analyze the arguments in Movants' brief along with the judicially noticed facts and those developed from Mr. Eldredge's testimony. One of Movants' assertions is that the purchase of Harmony and Spanish Moss by entities controlled by David Eldredge and Charles Thompson created a "new debtor." Movants allege the new principals do not have a right to challenge Movants' claims[3] and they are only doing so to increase their equity position, which constitutes bad faith. This argument

---

[3] Debtors are challenging Movants' claims via separate adversary proceeding (08-80101). Debtors allege causes of action including: (1) Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing, (2) Fraud in the Inducement to Enter a Contract, (3) Unconscionability, (4) Lender Liability, (5) Unfair Trade Practices, (6) Conversion, (7) Fraudulent Concealment, (8) Negligent Misrepresentation, (9) Breach of Contract Accompanied by a Fraudulent Act, (10) Breach of Fiduciary Duty, (11) Accounting, (12) Rescission for Want of Consideration, (13) Equitable Subordination pursuant to 11 U.S.C. § 510, (14) Disallowance of Secured Claim pursuant to 11 U.S.C. §506(b), (15) Setoff, and (16) Disallowance of Defendant's Claims Against the Estate Pursuant to 11 U.S.C. §502. The Court may discuss the adversary proceeding and/or specific causes of action in this order as many issues relate to the arguments of the parties, but nothing contained in this order is meant to decide issues contained in the adversary.

relies on the Court making a determination that the new principals have changed the direction of Debtors' bankruptcy cases from that which Mr. Casey took when he was in control of the Debtors. That is, the new principals are disputing Movants' claims when Mr. Casey would not have. The evidence does not support this argument. The original schedules filed in both Harmony and Spanish Moss indicate that Movants' claims are disputed. The schedules were filed on the same day as the voluntary petition and signed by Mr. Casey. Thus, it appears that Debtors disputed Movants' claims from the inception of the cases. There was no evidence offered at the hearing suggesting the adversary proceeding represents a new or different dispute than originally claimed by the Debtors' former principal. Movants asked the Court to take judicial notice of testimony at the meeting of creditors indicating that there was no known basis for disputing Movants' claims. A transcript was not introduced and the characterization of the testimony was disputed.

Movants also argue that the new principals are using the Harmony and Spanish Moss bankruptcy cases solely as a "litigation tactic" in a bad faith effort to force Movants to renegotiate valid debt instruments. In support of this argument Movants rely heavily on Judge Norton's opinion in *Dunes Hotel Assoc. v. Hyatt Corp.*, 245 B.R. 492 (D.S.C. 2000). In *Dunes* the Debtor was attempting to avoid an unrecorded lease with the Hyatt Corporation which the Debtor perceived to be unfavorable. The Debtor had prevented foreclosure by paying off its only pre-petition secured creditor and remained in bankruptcy for the sole purpose of seeking relief from the lease under § 544.

The *Dunes* Court held that it was at odds with public policy to allow a solvent debtor to exploit the Bankruptcy Code to provide a windfall to itself and a debtor's equity holder at the expense of the only remaining non-insider creditor. The Court stated,

> First, permitting Dunes to avoid Hyatt's leasehold interest would be in conflict with the former's fiduciary responsibilities as a debtor-in-possession.

> A trustee or debtor-in-possession is a fiduciary that should act in the interests of the creditors, not in its own interests…. Second, Dunes as a solvent debtor-in-possession should not be permitted to remain in bankruptcy for the sole purpose of being able to use the strong-arm clause of the Bankruptcy Code to strike down a bilateral contract to the detriment of its only remaining non-insider creditor. To allow Dunes to do so would set the stage for a post-deal negotiation of a lease that was entered into between two sophisticated entities…. While once the reason for Dunes's presence in bankruptcy may have been motivated by a desire to refinance the Aetna loan and emerge like a Phoenix from the ashes of a Chapter 11 re-organization, its sole motivation for remaining in bankruptcy is transparent and undeniable -- to avoid Hyatt's unrecorded lease. Such an action is not necessary to convert Dunes into a solvent entity because Dunes is already solvent.

*Id.* (internal citations omitted). There are distinctions between the present case and *Dunes*. First, there is the issue of solvency. Mr. Eldredge testified at length that the Debtors were in need of funds if the Debtors were to continue operations. Movants suggest that the presence of the large equity cushion in the property connotes solvency. Black's Law Dictionary defines insolvency as "having liabilities that exceed the value of assets" *or* "having stopped paying debts in the ordinary course of business or being unable to pay them as they fall due." *Black's Law Dictionary* (8th ed. 2004). While the Debtors may have equity in the real property, they are cash starved and hampered in operation. Debtors are presently insolvent as judged on the basis of cash flow.

Second, in *Dunes* the debtor in possession sought relief afforded exclusively by federal bankruptcy law. The adversary proceeding in this case alleges common law and/or state law causes of action which could be pursued outside the bankruptcy court. The Bankruptcy Code provides Debtors with protection from creditors while it pursues these claims. Without more evidence the Court is unable at this time to find that this is an improper use of Bankruptcy Code.

11

Movants point to the factors set forth in *In re Greenwood Supply Co.*, 295 B.R. 787 (Bankr. D.S.C. 2002) in support of its argument for a finding of subjective bad faith. In *Greenwood* the Court stated,

> [T]he Court notes that the *Carolin* Court instructed that the analysis of this issue should focus on the totality of the circumstances. Accordingly, this Court has relied on the following list of factors to guide its analysis of subjective bad faith:
>
> (1) The debtor has one asset;
> (2) Secured creditors' liens encumber the asset;
> (3) There are generally no employees except for the principals, and there is no ongoing business activity;
> (4) The debtor has little or no cash flow and no available sources of income to sustain a plan of reorganization or make adequate protection payments;
> (5) There are few, if any, unsecured creditors whose claims are relatively small;
> (6) There are allegations of wrongdoing by the debtor or its principals;
> (7) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;
> (8) The debtor is afflicted with the "new debtor syndrome" in which a one asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors;
> (9) There is no realistic possibility of reorganization of the debtor's business;
> (10) The reorganization essentially involves a two-party dispute; and
> (11) Bankruptcy offers the only possibility of forestalling the loss of the property.

*Id.* at 793 (internal citations omitted). *Greenwood* specifically states that these factors are a *guide*. The *Greenwood* factors are a non-exhaustive list of factors to be considered but the ultimate determination rests in the totality of all circumstances.

As for the factors, the Court made the determination in its earlier order that this is a single asset real estate case. Factor 1 weighs against the Debtors. Movants' lien encumbers the single asset. While the amount and validity is disputed by Debtors, at this time Movants hold a lien against the property. However, the lien does not fully encumber the property. Factor 2 weighs against the Movants. The monthly operating reports show that Debtors have no employees, but given the evidence presented the Court cannot conclusively find that there

12

is no business activity. This of course turns on the definition of "business activity," which in the present case is development and lot sales. Mr. Eldredge testified that there are few, if any, lots being sold at present and Debtors do not employ a sales staff. However, the Court is not persuaded that "business activity" in this context is so limited. Mr. Eldredge also testified that several contactors are present at the site performing a variety of improvements in order to get the project back on track and the lots ready for sale. Given all the circumstances the Court will weigh factor 3 against the Movants.

There is little to no income at present, but the Court cannot find that there is "no available sources of income to sustain a plan of reorganization or make adequate protection payments." There are lots remaining for sale. The Debtors' remaining lots and boat slips represent available sources of income. This factor weighs against Movants. The amount due to unsecured creditors is relatively small compared to the secured creditors' claims. However, there are other claims, secured and unsecured, to be protected. Factor 5 weighs against Movants.

As for factor 6 there are allegations of wrongdoing. However, it is worth noting that the allegations of wrongdoing asserted at the hearing were against Mr. Casey and not the new equity holders that control the Debtors. For example, Movants allege that a payment listed as "Palmetto Pointe" on the summary of accounts payable (admitted into evidence on a limited basis) in the amount of $2,761,601.00 was an investment in an unrelated "TV show." The only evidence relating to this payment is a one line entry on the accounts payable summary stating the payee and amount, and testimony from Mr. Eldredge. Movants' counsel repeatedly referred to the underlying consideration for the payment as a "TV show" suggesting it was a flamboyant personal expense by Mr. Casey, but Mr. Eldredge testified that he was familiar with the expense and it was for television advertising of Harmony

13

Township. The Court cannot ascertain the true nature of the expense at this time. Given the evidence the Court will not hold this against Debtors. Furthermore, for every allegation of wrongdoing against Debtors there are allegations by the Debtors against Movants, claiming that that their actions caused the Debtors' financial troubles. For example, Mr. Eldredge testified that he had reviewed the HUD-1 statements of all the lots sales since 2005 and compared them to the loan statements. He stated that Movants had failed to apply lot release payments in an amount exceeding $7,500,000. This factor is neutral.

There is evidence that supports a finding that timing of Debtors' bankruptcy filing was done with intent to "delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Debtors filed bankruptcy on the eve of a scheduled foreclosure sale. This factor weighs against Debtors. Debtors are not "afflicted with 'new debtor syndrome.'" These Debtors were not entities created to isolate the property at issue and the creditors from other property. Rather, Debtors were entities that were created years prior to the bankruptcy cases being filed in an effort to make a profit. Movants' suggestion that Harmony and Spanish Moss are "new debtors" because they changed equity shareholders is of little consequence in this analysis. The change in equity ownership merely alters who receives the profits of the project. There was no new entity created and no transfer of property. Other than the parcels that were sold in the normal course of business, the Debtors own the same property today that they did when the entities were created. This factor is neutral.

The next factor is whether there is a realistic possibility of reorganization of the Debtor's business. Given the lack of evidence the Court is unable to find that there is *no* realistic possibility of reorganization. This factor is neutral. Likewise, other than Movants' assertions that this is a two-party dispute, the only other evidence are the Debtors' schedules which indicate numerous creditors. This factor is neutral. Lastly, the Court is not persuaded

that bankruptcy offers the only possibility of forestalling the loss of the property. The majority of Debtors' causes of action asserted in the adversary proceeding are common law or state law causes of action. There is nothing in evidence that suggests that those same claims could not have been asserted as counterclaims in a foreclosure action in state court. This factor is neutral. After considering Movants' arguments, including consideration of the *Greenwood* factors, and viewing the totality of the circumstances the Court finds that Movants have failed to show by a preponderance of the evidence that Debtors filed this case in bad faith.

A further reason to deny dismissal lies within the dicta of *Carolin*,

> [I]t is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation.

*Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir. N.C. 1989). The purpose of Chapter 11 is to provide debtors a chance to reorganize their financial affairs. When there is little or no evidence suggesting bad faith, as in the present case, even a slim possibility of reorganization should be given a chance. Debtors have potential post-petition financing which may provide Debtors the opportunity needed to succeed in this case. At this relatively early stage, absent a showing of bad faith and complete futility, there is no reason to dismiss these cases.

### *Motions for Relief from Stay*

Movants have asked for relief from stay pursuant to § 362(d)(1), (2), and (3). Section 362 states in relevant part,

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

  (2) with respect to a stay of an act against property under subsection (a) of this section, if--
   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization;

  (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
   (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

11 U.S.C. § 362.

Debtor requests relief for cause under § 362(d)(1) asserting bad faith as "cause." Having found above that Movants failed to meet their burden to establish bad faith the Court denies relief under (d)(1). Movants' certification of facts indicates in question #7 that there is $31,258,740.00 in equity in the property. While there was some discussion about the accuracy of that figure at the hearing, Movants are bound to that value for the purposes of these motions for relief from stay. Debtors have equity in the property. Relief is denied pursuant to § 362(d)(2). Lastly, receiving relief from stay pursuant to § 362(d)(3)(A) requires more than a showing that confirmation of a proposed plan is questionable.

> [A]djudicating a relief from stay motion under § 362(d)(3)(A) is not to be a mini confirmation hearing. At a confirmation hearing, a debtor must prove its entitlement to confirm a plan under 11 U.S.C. § 1129 by a preponderance of the evidence, and concerning the plan feasibility requirement of § 1129(a)(11) in particular, the debtor must demonstrate that the confirmation of the plan is not "likely" to be filed (sic) [followed] by liquidation or the need for further financial reorganization. By comparison, the showing required by a debtor under § 362(d)(3)(A) is only that the plan have a reasonable possibility of being confirmed, which is a lesser showing than that required at confirmation…. In proving a "reasonable possibility" of plan confirmation, the stage of the proceeding assists in the showing a debtor must make: "At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being

16

confirmed and (3) the proposed or contemplated plan is not patently unconfirmable."

*In re Windwood Heights, Inc.*, 385 B.R. 832, 838 (Bankr. N.D. W. Va. 2008)(*quoting In re National/Northway Ltd. P'ship*, 279 B.R. 17, 24 (Bankr. D. Mass. 2002)(internal citations omitted).

Debtors have filed a plan of reorganization satisfying prong one. While there may be minor issues that need to be addressed and ironed out with certain creditors, all the creditors except Movants indicate the plan as proposed, with minor adjustments, has the ability to be confirmed. Movants are the only major opposition to confirmation and their claims are contingent on the outcome of the adversary proceeding. Furthermore, the proposed plan addresses Movants' claims to the extent they are found valid. Prong two is satisfied. Lastly, there is no evidence that suggests to the Court that Debtors' proposed plan of reorganization is patently unconfirmable. Relief is denied under § 362(d)(3).

### *Conclusion*

Movants failed to show by a preponderance of the evidence that Debtors filed this chapter 11 bankruptcy case in bad faith. Movants' Motions to Dismiss are denied. Furthermore, Movants failed to prove relief from stay is warranted under § 362(d)(1), (2), or (3). Movants' Motions for Relief from stay are denied.

AND IT IS SO ORDERED.
Columbia, South Carolina
September 11, 2008

17