U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 08-00599

ORDER

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/16/2008**



US Bankruptcy Court Judge
District of South Carolina

Entered: 10/17/2008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 08-00599-DD |
| Harmony Holdings, LLC,<br>　　　　　　　　　　Debtor. | Chapter 11 |
| IN RE: | C/A No. 08-00604-DD |
| Spanish Moss Development, LLC,[1]<br>　　　　　　　　　　Debtor. | Chapter 11 |

**ORDER**

This matter comes before the Court upon the Motion for Temporary Allowance of Chapter 11 Claims for Voting Purposes ("Motion") filed by Barney Ng and R.E. Loans, LLC (collectively "Movants") on August 27, 2008. A hearing was held on the Motion September 18, 2008. Harmony Holdings, LLC, Spanish Moss Development, LLC (collectively "Debtors"), and Movants appeared by and through counsel. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). In compliance with Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law[2]:

***Findings of Fact***

1. Debtors own approximately 780 acres of real property and seek to develop a planned community including both commercial and residential sections and a marina. Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on January 31, 2008. Debtors' schedules filed with the petitions list Movants as creditors with disputed claims.

---

[1] The cases of Harmony Holdings, LLC and Spanish Moss Development, LLC are being jointly administered pursuant to an order entered June 10, 2008.
[2] To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2. On May 23, 2008 Movants filed six proofs of claim, three in each case, evidencing secured claims against the bankruptcy estates. R.E. Loans filed a secured claim in the amount of $41,432,036.90 in each case. Barney Ng filed two $5,000,000.00 secured claims in each case, for a total claim of $10,000,000.00 in each case. The liabilities, if any, are joint and several such that a total of $51,432,036.90 is owed by the combined Debtors. The debts are secured by mortgages encumbering Debtors' real estate.

3. On June 13, 2008, Debtors objected to the claims and filed an adversary proceeding which includes the following causes of action: breach of contract and breach of implied covenant of good faith and fair dealing; fraud in the inducement to enter a contract; unconscionability; lender liability; unfair trade practices; rescission; conversion; fraudulent concealment; negligent misrepresentation; breach of contract accompanied by a fraudulent act; breach of fiduciary duty; demand for accounting; invalidation of the Defendant's liens; equitable subordination; setoff; and disallowance of Defendants' claims against the estate. (Adv. Proc. C/A No. 08-80101-DD) (the "Litigation"). The objections to Movants' claims will be resolved through the adversary proceedings. The adversary proceeding will not be concluded before the deadline for voting on the plan of reorganization.

4. This Court determined the cases to be single-asset real estate cases, as defined by 11 U.S.C. § 101(51B), by order entered on June 20, 2008.

5. Debtors filed a Plan of Reorganization on July 23, 2008 and this Court established a deadline for objections to the Disclosure Statement and submission of ballots accepting or rejecting the plan of September 8, 2008.

6. Debtors' Plan of Reorganization provides a separate class for R.E. Loans, LLC and a separate class for Barney Ng. In each case the Movant is the only creditor in the respective class. The Plan of Reorganization provides that the allowed claims of the Movants, if any, will be paid in full with interest, albeit after some delay.

2

7. It appears that the continued operation of the Debtors, and thus the feasibility of reorganization, is dependent upon a loan from Kennedy Funding, Inc., which, if approved, is scheduled to close on October 29, 2008.

8. The confirmation hearing on Debtors' plan of reorganization is scheduled for October 28, 2008.

9. Barney Ng testified to the validity of Movants' claims and identified business records of R.E. Loans, LLC that support the amount of its claim.

10. Barney Ng testified that the two $5,000,000.00 notes in his favor are supported by the consideration of services he provided Debtors.

### *Conclusions of Law*

Movants ask the Court to temporarily allow their claims for the purpose voting on the Debtors' plan. Movants contend that their claims are impaired by the plan and the effect of allowing the claims, coupled with Movants' rejection of the plan, is to require consideration of 11 U.S.C. § 1129(b)[3] at the time of the confirmation hearing.[4] Debtors contend that § 1126(a), coupled with § 502(a), is irreconcilably in conflict with Fed. R. Bankr. Proc. 3018[5] and that Movants should not be permitted to vote on the chapter 11 plan because their claims are not "allowed."[6] Alternatively Debtors argue that Movants do not meet the standard adopted by various courts for temporary allowance of claims pursuant to Rule 3018 and that the Court should exercise its discretion to deny the relief that has been requested.

Section 1126(a) states, "the holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." Section 502(a) provides, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest

---

[3] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et al*, will be by section number only.
[4] Debtors contend that all other classes of creditors are either unimpaired or have accepted the plan. Movants did not dispute this.
[5] Further reference to the Federal Rules of Bankruptcy Procedure will be by rule number only.
[6] Debtors contend that Movants may otherwise raise objections to confirmation buy may not reject the plan.

3

…. objects." Authority to temporarily allow a claim comes, if at all, from Rule 3018(a) which states, "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Our Court of Appeals has construed §§ 1126(a) and 502(a) stating, "[t]hese provisions allow only holders of claims to which no party has objected to vote on Chapter 11 plans." *Jacksonville Airport, Inc., v. Michkeldel, Inc.*, 434 F.3d 729, 731 (4th Cir. 2006).

Debtors contend that this analysis is dispositive and that the Bankruptcy Code conflicts with Rule 3018(a). Debtors ask the court to write the temporary claims allowance provision of Rule 3018(a) out of the Federal Rules of Bankruptcy Procedure. One court has opined:

> This Rule is obviously contrary to the seemingly clear provisions of the Code because it purports to give discretion to a court to permit a claim or interest to vote even though the claim is challenged and the objection is yet to be ruled on.
>
> It needs no elaborate citation of authorities for the proposition that the rulemaking power granted to the Supreme Court by 28 U.S.C. § 2075 on the subject of bankruptcy does not authorize adoption of rules which are in conflict with any Act of Congress.

*In re Gardinier, Inc.*, 55 B.R. 601, 604 (Bankr. M.D. Fla. 1985). Interestingly, the *Gardinier* court decided the dispute on other grounds and no other court has followed its analysis in a published opinion. The *Gardinier* court itself recognizes,

> [O]ne can easily visualize a situation where it would be grossly unfair and unjust to disenfranchise any claim or interest just because the debtor interposed an objection to the allowance of the claim or interest. This is true especially in situations when the objection appears to be frivolous and without basis, and, because of time restraints, the court is not in the position to consider the objection on its merits prior to the confirmation hearing. It is not unusual in a Chapter 11 case that time is of the essence and frequently the success or failure hinges upon a prompt resolution of a debtor's right to obtain confirmation. This urgency, in turn, would not permit extensive hearings on objections to claims prior to the bar date

4

> fixed by the court for voting. To achieve justice, some discretion must be left to the court to deal with the problem just described.

*Id.* at 604.

The Fourth Circuit Court of Appeals has acknowledged the application of Bankruptcy Rule 3018(a). *See Jacksonville Airport, Inc. v. Michkeldel, Inc.*, 434 F.3d 729, 732 (4th Cir. 2006) ("Of course, the court upon motion could have temporarily allowed the claim for voting purposes or fully adjudicated [the] objection prior to the vote."). Although the statement is dicta, such statements by the Court of Appeals are persuasive authority and should be followed by a lower federal court absent well grounded reasons for following contrary authority.

The recognition of Rule 3018(a) as the basis for temporary allowance of claims for chapter 11 voting purposes by the Fourth Circuit finds statutory support in 28 U.S.C. 157(b)(2)(B) which provides the jurisdictional predicate for matters involving the, "allowance or disallowance of claims against the estate … and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 …." Further support arises from the statutory scheme of § 502, which provides both for claims estimation (with respect to contingent or unliquidated claims where adjudication of the claim would unduly delay administration of the estate) and reconsideration of allowed and disallowed claims. *See* § 502(c),(j). This flexibility in dealing with claims suggests equitable authority to do just what Rule 3018 allows. There is, thus, no conflict of Rule 3018 with the statutory scheme's weaving of voting rights and allowance of claims.

The question then remains whether, despite the objection to the claims of Movants, the court should temporarily allow the claims for voting purposes. The Bankruptcy Rules leave the determination of whether to temporarily allow a claim to the discretion of the court. Courts in other circuits have developed multi-factor tests for temporary allowance of claims. *See, e.g., In re Armstrong*, 294 B.R. 344, 354 (10th Cir. 2003) (Identifying three non-

5

exclusive circumstances: (1) when an objection to the claim has been filed and the objection was filed too late to be heard prior to the confirmation hearing, (2) when fully hearing the objection would delay administration of the case, or (3) when the objection is frivolous or of questionable merit.); *In re Gardinier*, 55 B.R. 601, 604-05 (Bankr. M.D. Fla. 1985) (Considering (1) whether the objection to the claim at issue "appears to be frivolous or without basis," (2) the effective power which the holder of the disputed claim may have to "scuttle [the] reorganization proceeding, which is almost near completion[,]" and (3) given the facts of that case, that the debtor was willing to preserve funds to pay the disputed claim under the terms of the plan in the event the claim was ultimately allowed.).  One judge in this District has stated "the Court must use its own discretion when deciding whether or not to allow the vote of a creditor whose claim has been objected to." *In re Remington Forest*, 1996 WL 33340744 at *9 (Bankr. D.S.C. June 18, 1996) (internal citations omitted).  When applying Rule 3018, courts often consider whether undue delay in case administration will result from delaying confirmation of a chapter 11 plan until after all claims objections can be heard. *In re Armstrong*, 294 B.R. at 354, *citing*, *9 Collier on Bankruptcy* ¶ 3018.01[5] (Lawrence P. King ed., 15th ed. 2003); *In re Gardinier*, 55 B.R. at 604-05.

     Here, the Court has made the determination that these are single-asset real estate cases, triggering accelerated scheduling.  There is complex litigation pending that will not be finalized before the balloting deadline or the confirmation hearing.  Awaiting final adjudication of the adversary proceeding will delay the administration of the case.

     Debtors' contention that Movants' actions contributed to the delay in resolving the claims objections this case is not without basis.  Movants filed a motion to dismiss the adversary proceeding rather than an answer.  They withdrew the motion to dismiss and filed an answer shortly before a hearing on the motion to dismiss.  Both parties have employed litigation strategies, including discovery disputes, which do not lend themselves a fast track. The truth, however, is that the litigation is complicated and it would be unrealistic to expect

6

resolution in a few short months. There is a sound basis in advancing the administration of this case for the temporary allowance of Movants' claims.

At the hearing, Barney Ng testified on behalf of R.E. Loans and himself regarding the amounts of their claims. Mr. Ng testified as to the amount owing and due to R.E. Loans, and the court admitted into evidence the proofs of claim and attachments. Mr. Ng responded to earlier allegations made by the Debtors that R.E. Loans did not credit the underlying debt in the amount of $8.5 million for lots sold and released from the mortgage securing the debt to R.E. Loans. He testified that a percentage of each lot release was paid into an account established pursuant to the loan documents. Mr. Ng provided an accounting that reflects some $9.47 million was deposited into the account, of which approximately $5.97 million was returned to the Debtors and $3.5 million was applied to interest on the debt.

With regard to his own claim, Mr. Ng testified that the two $5 million non-interest-bearing notes were for the payment of services that he provided to the Debtors. He testified that he negotiated with the Debtors' then existing secured lender Western United Life Assurance ("WULA"). He testified that WULA was then in bankruptcy and it would not consent to new debt to be secured by the property. Mr. Ng's testimony indicated that he negotiated with WULA to restructure its debt and allow other new debt to be secured by the property. Mr. Ng further testified he negotiated the buyout of one of Harmony Holdings' members, Michael Chesser, for the benefit of the other member, Tim Casey. According to that testimony, the Debtors agreed to and did execute two $5 million non-interest-bearing notes for the services. The notes are secured by mortgages.

Rule 3018(a) provides for temporary allowance of claims, "in an amount which the court deems proper for the purpose of accepting or rejecting a plan." The temporary allowance of a claim under Rule 3018 is not dispositive as to the amount of the claim. Rather, Rule 3018 only provides limited voting authority to the creditor. *In re Armstrong*,

294 B.R. at 355. The evidence adduced at the hearing is sufficient to temporarily allow Movants' claims in the amounts filed.

For these reasons, the Court finds that R.E. Loans and Barney Ng have established their claims for the limited purpose of voting on the Debtors' Plan of Reorganization. This order does not otherwise adjudicate the claims or the adversary proceeding. The Movants claims are temporarily allowed, in the full amounts, for the purpose of voting on the plan of reorganization filed by the Debtors.

AND IT IS SO ORDERED.
Columbia, South Carolina
October 16, 2008